IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Juanita Robinson et al.,**

        **Plaintiffs,**

v.                                                            Case No. 04-2321-JWL

**Food Service of Belton, Inc.
d/b/a Kentucky Fried Chicken;
Elaine Willard; John Cook,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Juanita Robinson and eleven other individuals brought this suit on behalf of themselves and others similarly situated seeking damages for unpaid overtime compensation and unpaid minimum wage compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. (FLSA). Plaintiffs allege defendants, Food Service of Belton, Inc. ("Defendant KFC"), Elaine Willard, and John Cook, incorrectly compensated them for work in excess of 40 hours a week at rates less than one and one-half times the regular rates at which they were employed. Plaintiffs additionally claim they worked hours for which they were not compensated, and defendants improperly reduced the rate of pay on the final pay checks of employees who did not give two weeks' notice of their intention to leave KFC as specified in defendant KFC's written policy. This matter is presently before the court on defendants' motion to compel arbitration of the claims of plaintiffs Jeremy Briggs, Codey Cheek, Don Jones, and Terri Schendel pursuant to the arbitration agreement each signed as a condition of their employment with Defendant KFC.

**Background**

Plaintiffs filed suit on July 11, 2004. In their complaint, plaintiffs outlined the above allegations, noting plaintiffs and similarly situated employees were hourly employees of defendants. Summons was issued to Food Services of Belton, Inc. (a Kansas corporation doing business as KFC), John Cook, and Elaine Willard on July 27, 2004. Counsel for defendants entered their appearances as counsel of record for all defendants on August 18, 2004, and filed answers for each defendant the same day. In their answers, defendants listed several affirmative defenses, none addressing plaintiffs' arbitration agreements. Pursuant to Fed. R. Civ. P. 16(b), the magistrate judge conducted a scheduling conference with the parties on September 22, 2004. At the conference, the magistrate judge established discovery deadlines, deadlines relating to alternative dispute resolution, and a deadline for the filing of dispositive motions. In addition, the magistrate judge set a date for the final pretrial conference and set a trial date.

Two days after the scheduling conference, defendants separately filed amended answers setting forth as an affirmative defense the binding arbitration agreements which precluded litigation of claims. Over the next six months, the parties engaged in discovery, including written discovery, and the taking of the depositions of several plaintiffs, including at least three of the four plaintiffs who are the subject of defendants' motion. The parties also participated in mediation. At no time during the discovery process or the mediation effort did defendants assert an intent to arbitrate.

On March 24, 2005, defendants asserted a counterclaim for indemnity against plaintiffs Juanita Robinson and Terri Schendel alleging that, as managers of defendants' KFC restaurant,

Juanita Robinson and Terri Schendel were responsible for any alleged FLSA violations. On plaintiffs' motion, defendants' counterclaim was dismissed with prejudice by the court on April 19, 2005. The final pre-trial conference was held on April 27, 2005. Although defendants asserted the existence of arbitration agreements as an affirmative defense in the pretrial order, they did not move to compel arbitration until three weeks after the pretrial conference.

**Analysis**

Defendants move to compel arbitration of the claims of Jeremy Briggs, Codey Cheek, Don Jones and Terri Schendel based on the arbitration agreements signed by those employees. Plaintiffs oppose the motion, asserting that defendants have waived their right to arbitrate by substantially participating in the litigation process without asking the court to stay litigation and compel arbitration.[1] Under federal law, "when a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver." *Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 465-66 (10th Cir. 1988). Due to strong state and federal policies favoring arbitration, a party asserting a waiver of arbitration has a heavy burden of proof. *Malarky Enters. V. Healthcare Tech.*, 962 F. Supp. 1427, 1430 (D. Kan. 1997). A waiver of arbitration rights requires an unequivocal demonstration of intent to waive. *Id.* In determining whether the right to arbitration has been waived, the Tenth circuit examines: (1) whether the party's actions are

---

[1] Plaintiffs also contend their claims do not fall within the scope of the arbitration agreements. The court declines to address this argument because defendants' motion is ultimately denied on waiver grounds.

3

inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (quoting *Peterson*, 849 F.2d at 467-68). Whether a waiver has occurred depends upon the facts of the particular case. *Reid Burton Constr. Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980).

Plaintiffs contend that since the goal of arbitration is to save time, expense and judicial resources, defendants' course of action has been inconsistent with that purpose. The court agrees. Defendants first made the arbitration agreements known in their amended answers, filed September 24, 2004, where it was identified as an affirmative defense. Despite mentioning the agreements in their amended answers, defendants continued to participate in court conferences and discovery. Defendants also filed a counterclaim against Juanita Robinson and Terri Schendel. Defendants participated in mediation and deposed several plaintiffs in this case including three of the four plaintiffs that are the subject of defendants' motion to compel. The court finds significant the fact that defendants did not raise the issue of arbitration until more than ten months after the suit commenced, despite ample opportunities to do so. This action in itself is inconsistent with

4

the right to arbitrate, as the parties expended considerable time and energy pursuing discovery, as well as resources defending the indemnity counterclaim against Juanita Robinson and Terri Schendel. The court further notes defendants participated in several court scheduling conferences where, as required, alternative dispute resolution was discussed. The parties identified and agreed upon a mediator per court order and engaged in mediation on January 20, 2004.

Defendants' ten month delay in raising this issue is inconsistent with the right to arbitrate. Courts have found waiver where parties, like defendants here, had already devoted an inordinate amount of resources to resolving substantial legal issues before the issue of arbitration was raised. *Compare Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2d Cir. 1995) (holding the right to arbitration was waived where party waited seven months to demand arbitration despite filing numerous pleadings, none of which asserted the defense of arbitration); *S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir. 1990) (same, where party waited eight months after lawsuit was filed to demand arbitration during which time the parties filed motions and took discovery); *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497-98 (5th Cir. 1986) (same, where party waited eight months after lawsuit was filed to demand arbitration during which time the party took discovery); *Eagle Traffic Control, Inc. v. James Julian, Inc.,* 945 F. Supp. 834, 835 (E.D. Pa. 1996) (same, where parties had been actively litigating for seven months); *with McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576-77 (10th Cir. 1998)(holding no waiver where defendant demanded arbitration shortly after complaint was filed, and had no opportunity to exploit discovery or other judicial procedures not available in arbitration); *Stocker v. Syntel, Inc.*, 2004 WL 1851410, *4 (D. Kan. Aug. 16, 2004)(same, where

arbitration was demanded in defendant's first pleading, and defendant had not engaged in discovery); *Gratzer v. Yellow Stone Corp.*, 316 F. Supp. 2d 1099, 1105-06 (D. Kan. 2004)(same, where defendant filed motion to compel arbitration as first responsive pleading, and parties had not engaged in discovery or other judicial procedures).

Finally, because waiver cases are fact specific, the length of time defendant waited to compel arbitration is not always determinative. Here, however, defendants failure to timely file a motion to compel, paired with their apparent preparation for a scheduled trial, is factually similar to *Peterson v. Shearson/American Express, Inc.* where the Tenth Circuit held defendant corporation's actions were inconsistent with its alleged intent to arbitrate when it prepared for a scheduled trial such that the corporation's delay in filing the motion to compel affected and probably misled plaintiff customer, who had also prepared for trial. 849 F.2d 464, 468 (10th Cir. 1988).

In addition to behavior inconsistent with defendants' right to arbitrate, the above evidence clearly satisfies the second factor used to determine whether waiver occurred. "The litigation machinery had been substantially invoked" and the parties "were well into preparation of a lawsuit" before defendants notified plaintiffs of their intent to arbitrate. *See Metz*, 39 F.3d at 1489. While defendants asserted the arbitration agreements as an affirmative defense in their amended answers, this assertion was insufficient to notify the opposing party of defendants' intent to arbitrate. Defendants listed ten affirmative defenses in their amended answer pursuant to Fed. R. Civ. P. 12(b). Defendants set out the arbitration agreements as one of several means to preclude plaintiffs' claims. While plaintiffs may have been made aware of defendants' *right* to arbitrate,

6

they were not notified of defendants' *intent* to arbitrate until the current motion was filed on May 19, 2005. Moreover, defendants course of conduct in taking depositions, engaging in discovery, and participating in other judicial procedures not available in arbitration is entirely inconsistent with an effort to notify plaintiffs of an intent to arbitrate.

Another significant factor weighing against defendants is the indemnity counterclaim filed against Juanita Robinson and Terri Schendel.  The counterclaim was filed in March 2005, two months before the present motion was filed.  The Tenth Circuit has previously found no waiver of the right to compel arbitration where the plaintiff was not required to defend against a counterclaim.  *See Logicon, Inc.*, 143 F.3d at 576 (finding no waiver where plaintiff was not required to defend against a counterclaim, or participate in discovery); *Stocker*, 2004 WL 1851410, *4 (noting defendant did not file a counterclaim as one factor indicating no waiver occurred); *Gratzer*, 316 F. Supp. 2d at 1105 (same, where defendant filed no counterclaims). Defendants' counterclaim, filed with no request for a stay in the proceedings, exemplifies defendants' use of the federal court system to hash out legal issues which arbitration would resolve or preclude.  The counterclaim, at best, indicates defendants' intent to litigate this case in federal court.  At worst, it indicates a waste of the court's resources if defendants intended to eventually compel arbitration.  Either way, the counterclaim is strong evidence defendants intended to waive their right to compel arbitration.

Lastly, the issue of whether defendants' delay in compelling arbitration "affected, misled, or prejudiced" the opposing counsel is balanced heavily in plaintiffs' favor. *Metz*, 39 F.3d at 1489. As set forth above, merely asserting the right to compel arbitration as an affirmative defense does

not itself put plaintiffs on notice of defendants' intent to pursue arbitration. When defendants proceeded to prepare for a lawsuit, plaintiffs proceeded similarly. Plaintiffs claim the hours expended by plaintiffs' counsel are in the hundreds of dollars, and the cost of deposition transcripts and other expenses is in the thousands of dollars. Besides the cost of pretrial activity, defendants would not, in the context of arbitration, have access to certain information gleaned from discovery. The issue here, however, is not necessarily a matter of information defendants garnered through the discovery process. Rather, plaintiffs have been prejudiced by the cost and expense of the "litigation machinery." The court finds plaintiffs were unduly prejudiced by defendants' delay in seeking arbitration. In sum, having weighed the *Metz* factors, the court finds defendants have waived their right to enforce the arbitration agreements by acting contrary to an intent to arbitrate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to compel arbitration (doc. 48) is denied.

**IT IS SO ORDERED.**

Dated this 11th day of July, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge

8