**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

**Juanita Robinson et al.,**

        **Plaintiffs,**

v.                                                             Case No. 04-2321-JWL

**Food Service of Belton, Inc.
d/b/a Kentucky Fried Chicken;
Elaine Willard; John Cook,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Juanita Robinson and eleven other individuals brought this suit on behalf of themselves and others similarly situated seeking damages for unpaid overtime compensation and unpaid minimum wage compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). This matter is presently before the court on defendants' motion for summary judgment (doc. #50). As explained below, the motion is granted in part and denied in part.

*Plaintiffs' Fair Labor Standards Act Claims*

In the pretrial order, plaintiffs allege that defendants, in violation of the FLSA, failed to compensate plaintiffs for hours worked "off the clock" and failed to compensate plaintiffs at a time-and-a-half rate for work in excess of forty hours per week. Defendants move for summary judgment on these claims on the grounds that the amounts plaintiffs have claimed as damages are "speculative, remote, imaginary, conjectural and impossible of ascertainment" and, thus, are not recoverable. Specifically, defendants assert that plaintiffs are able to provide only "estimates" of

the hours that they were allegedly required to work "off the clock" and only "estimates" of the hours that they allegedly worked as overtime hours. Defendants' argument is easily resolved and their motion is summarily denied.

As plaintiffs highlight in their response to defendants' motion, the essence of their claims is that they were required to perform work "off the clock" and that defendants did not compensate them for this time. According to plaintiffs, then, defendants failed to record the hours that plaintiffs actually worked. In light of the nature of plaintiffs' allegations, plaintiffs' claims and, more specifically, their attempts to "estimate" their damages are not foreclosed by the rule that prohibits recovery of uncertain and speculative damages. In fact, the Supreme Court has expressly rejected the argument espoused by defendants. *See Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946).

As explained by the Court in *Mount Clemens*, in FLSA cases where the employer's time records are inaccurate or incomplete, an employee's burden is met "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. If the employee meets this burden, the burden shifts "to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the employer fails to produce such evidence, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688. In so holding, the Court in *Mount Clemens* emphasized that an employer "cannot be heard to complain that the damages lack the

exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of the [FLSA]." According to the Court,

> Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

*Id*. (citation omitted).

Defendants contend that *Mount Clemens* simply does not apply to this case because defendants have maintained accurate and complete time records concerning the hours worked by plaintiffs. In light of plaintiffs' evidence to the contrary, a jury must decide whether defendants' time records are accurate. If the jury decides that the time records are accurate and complete, then any damages owed to plaintiffs will be readily ascertainable by reference to those records. If the jury decides that the time records are inaccurate or incomplete, then plaintiffs' evidence concerning their damages is sufficient under *Mount Clemens*. Under either alternative, defendants are not entitled to summary judgment and their motion is denied.

*Plaintiffs' Kansas Wage Payment Act Claims*

Several plaintiffs claim that defendants, in violation of the Kansas Wage Payment Act,

K.S.A. §§ 44-313 et seq., unlawfully withheld wages from their final paychecks. By way of background, KFC requires an employee to provide two weeks' notice of his or her intent to leave KFC's employment; if the employee fails to provide such notice, KFC pays that employee at the federal minimum wage rate (instead of the employee's higher hourly rate) for the last pay period worked by the employee. It is undisputed that the particular plaintiffs challenging this policy as violative of the Kansas Wage Payment Act all left their employment without providing two weeks' notice to KFC. Defendants move for summary judgment on the Kansas Wage Payment Act claims, asserting that KFC's requirement that an employee provide two weeks' notice was a lawful "condition precedent" to being paid at the employee's most recent wage rate for the final pay period. Plaintiffs oppose defendants' motion on the grounds that KFC's policy results in an impermissible forfeiture of wages under Kansas law.

The Kansas Wage Payment Act provides that an employee whose employment is terminated or who quits his or her employment is entitled to collect all of his or her "earned wages." *See* K.S.A. § 44-315(a). Kansas law permits an employer to impose a condition precedent to the employee's earning of wages; however, once an employee's right to a benefit becomes absolute, a condition subsequent cannot impose a forfeiture. *Weir v. Anaconda Co.*, 773 F.2d 1073, 1084 (10th Cir. 1985) (citing Kansas cases). The court's task, then, is to determine whether KFC's policy places a condition precedent on an employee's entitlement to wages at the employee's regular hourly rate or whether the policy attempts to impose a forfeiture. *See id.* Kansas courts have defined a condition precedent under the Kansas wage statutes as:

> something that is agreed must happen or be performed before a right can occur to

4

> enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.

*Id*. (citations omitted).

The court believes that the Kansas Supreme Court, if faced with the issue, would conclude that KFC's policy, assuming an employee is made aware of the policy at the outset of the employment relationship, places a condition precedent on an employee's entitlement to wages at the employee's regular hourly rate. In so holding, the court is guided by the Kansas Supreme Court's decision in *Sweet v. Stormont Vail Regional Medical Center*, 231 Kan. 604 (1982). In *Sweet*, the plaintiff, at the beginning of her employment with the defendant hospital, was provided with a copy of the defendant's employee handbook, which set forth the hospital's policy regarding payment for unused vacation time upon resignation of employment. *Id.* at 605. Pursuant to that policy, any employee who resigned and who provided two weeks' written notice would be paid for unused accumulated vacation time not exceeding one and one-half times the employee's annual vacation benefit. *Id*. at 606. The plaintiff resigned her employment without giving any prior notice that she intended to do so and the hospital, relying on the notice provisions in the employee handbook, refused to pay the plaintiff for her unused vacation time. *Id*. at 605.

The Kansas Supreme Court upheld the hospital's notice requirement as a valid condition precedent to the receipt of vacation pay. *See id.* at 610-11. In reaching this decision, the Court recognized that accrued vacation time constituted "wages" for purposes of the Kansas Wage Payment Act, but held that those wages had not been "earned" because the plaintiff failed to

5

comply "with a valid provision or condition precedent of her employment contract necessary to receive" such wages. *See id.* at 612. The Court emphasized that

> [i]n determining the rights which accrue under an employment contract, the entitlement thereto or eligibility therefor, the contract controls so long as it is not unreasonable or illegal. There is no inherent right to a vacation or to payment for unused vacation time and the rights thereto, if any, must be found in the employment contract. When, as in the instant case, the employee is made aware of company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms.

*See id*. at 611. As the plaintiff in *Sweet* was undisputedly aware of the policy and the notice requirement was reasonable in light of the hospital's need to be adequately staffed for the health and safety of its patients, the Court enforced the terms of the contract and upheld the hospital's refusal to pay the plaintiff for her unused vacation time. *See id.*

Here, neither Kansas nor federal law required KFC to pay its employees wages higher than the federal minimum wage absent agreement in KFC's employment contracts. Stated in the language of *Sweet*, plaintiffs did not have an inherent right to wages higher than the federal minimum wage; thus, their right to wages above the federal minimum wage stems from their employment contracts. Under the rationale of *Sweet*, then, plaintiffs (assuming they were aware of the notice policy) did not earn wages at their regular rate of pay for the final pay period unless they satisfied the condition precedent of the contract–providing two weeks' notice prior to resigning their employment. Plaintiffs do not assert that the contract is unreasonable or unlawful;[1]

---

[1] Plaintiffs Berger, Heslip, Owens and White contend that they were minors at the time they executed their employment contracts and, thus, the contract is voidable as to them and the contract cannot be enforced to their detriment. This argument is rejected. As an initial matter, plaintiffs have submitted no evidence concerning their age at the time of contracting. Thus,

6

thus, the contract language controls.

The only remaining issue, then, is whether plaintiffs were aware of the policy at the time they entered into their employment contracts. Defendant's evidence demonstrates that plaintiffs Briggs, Heslip and Owens were aware of the policy; indeed, these plaintiffs signed statements at the beginning of their employment in which they acknowledged understanding of the notice policy. The record is devoid of any evidence, however, concerning whether plaintiffs Berger, Parsons, White and Schendel were aware of the policy. While John Cook testified that "all employees" were advised of the policy either verbally or in writing, there is no specific evidence demonstrating that these particular plaintiffs were made aware of the policy. Thus, summary judgment is granted in favor of defendants as to plaintiffs Briggs, Heslip and Owens as it is

---

they have not met their burden of establishing a genuine issue of material fact for trial. *See Trainor v. Apollo Metal Specialities, Inc*., 318 F.3d 976, 979 (10th Cir. 2002) (once moving party presents evidence showing the absence of a genuine issue of material fact, Rule 56(e) requires the nonmoving party to set forth specific facts showing there is a genuine issue for trial); Fed. R. Civ. P. 56(e) (party opposing summary judgment may not rest upon mere allegations or denials of the party's pleading but must set forth specific facts "by affidavits or as otherwise provided in this rule").

Moreover, while a minor's contract is generally "voidable" at the instance of the minor, *see* K.S.A. § 38-102, the court does not believe that the Kansas Supreme Court, if faced with the issue, would permit these plaintiffs to disaffirm their employment contracts when those contracts were, on the whole, beneficial to those plaintiffs. *See Sheller by Sheller v. Frank's Nursery & Crafts, Inc*., 957 F. Supp. 150, 153-54 (N.D. Ill. 1997) (district court was "confident" that the Illinois Supreme Court would not permit plaintiffs to disaffirm employment contract containing arbitration provision where result would be that plaintiffs would retain advantage of employment but repudiate the basis of that employment); *see also Oetinger ex rel. Oetinger v. Polson ex rel. Polson*, 20 Kan. App. 2d 255, 259 (1994) (recognizing principle that a minor cannot take the benefits of a contract while disaffirming the burden).

7

undisputed that these plaintiffs were aware of the policy, and summary judgment is denied as to plaintiffs Berger, Parsons, White and Schendel because factual issues exist regarding whether they had knowledge of the policy.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (doc. #50) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 27th day of July, 2005, at Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge