# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Juanita Robinson; Jeremy Lee Briggs;**
**Don R. Jones;Terri A. Schendel;**
**Joseph Tyler Berger by and through**
**his next friend Kelly Jackson, Esq.;**
**Danyell Heslip; Vicki Lynn Owens;**
**and Jerry White,**

            **Plaintiffs,**

v.                                                                                    Case No. 04-2321-JWL

**Food Service of Belton, Inc.**
**d/b/a Kentucky Fried Chicken;**
**Elaine Willard; and John Cook,**

            **Defendants.**

## MEMORANDUM & ORDER

Plaintiffs brought this suit seeking damages for unpaid overtime compensation and unpaid minimum wage compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). Plaintiffs' claims were tried to a jury and the jury returned a verdict in favor of all plaintiffs, finding that defendants failed to compensate plaintiffs for all hours worked during one or more workweeks. This matter is now before the court on defendants' renewed motion for judgment as a matter of law or, in the alternative, for new trial (doc. #87). For the reasons set forth below, the motion is denied in its entirety.

*The Timeliness of Defendants' Motion*

As a threshold matter, plaintiffs assert that defendants' motion must be denied as it was untimely filed. Plaintiffs are incorrect. Pursuant to Federal Rules of Civil Procedure 50(b) and 59(b), both a renewed motion for judgment as a matter of law and a motion for new trial must be filed no later than 10 days after entry of judgment. Pursuant to Rule 6(a), when the period of time allowed for filing is less than 11 days (as it is in this case), weekends and legal holidays are excluded from the computation. Fed. R. Civ. P. 6(a). Judgment in this case was entered on September 12, 2005. Thus, ten days from September 12, 2005, excluding weekends, is September 26, 2005–the day on which defendants' motion was filed. The court, then, will consider the merits of defendants' motion.

*Sufficiency of the Evidence regarding Plaintiffs' Damages*

Plaintiffs' evidence at trial, as credited by the jury, demonstrated that plaintiffs were required to perform work "off the clock" with defendants' knowledge and that defendants did not compensate them for this time. Each plaintiff, with the exception of plaintiff Jeremy Briggs,[1]

---

[1] As defendants point out, Mr. Briggs did not provide any estimate at trial concerning the number of hours he worked off the clock, although he did testify that he believed he worked hours for which he was not compensated. According to defendants, then, any damages award to Mr. Briggs is against the weight of the evidence as there is no evidence from which the jury could award damages to Mr. Briggs. The court disagrees and concludes that there was sufficient evidence presented at trial from which the jury could award damages to Mr. Briggs. Specifically, Mr. Briggs testified that when he was working night shifts as a cook for KFC he worked one hour to one-and-a-half hours past the closing time of the restaurant. He testified that when he was working night shifts as a cashier for KFC he worked 30 minutes to one hour past the closing time of the restaurant. The time records introduced by defendants, however,

2

provided an estimate of the number of hours that he or she worked "off the clock." According to defendants, the number of hours claimed by plaintiffs were so "speculative, remote, imaginary, conjectural and impossible of ascertainment" that plaintiffs cannot recover damages for those hours. However, the evidence presented by plaintiffs at trial, which the jury obviously believed, showed that defendants failed to record the hours that plaintiffs actually worked. In these circumstances, the fact that plaintiffs are only able to provide an estimate of their damages is not foreclosed by the rule that prohibits recovery of uncertain and speculative damages. *See Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946).

As explained by the Court in *Mount Clemens*, in FLSA cases where the employer's time records are inaccurate or incomplete, an employee's burden is met "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. If the employee meets this burden, the burden shifts "to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the

---

reflect numerous occasions when Mr. Briggs was clocked out at the time the restaurant closed. Clearly, the jury in this case believed that defendants' time records were inaccurate and that defendants had their managers clock out employees at the end of their scheduled shifts regardless of whether those employees were still working. Thus, the jury could reasonably conclude that Mr. Briggs, although clocked out by his managers at the time the restaurant closed, actually worked past that time on each night shift that he worked. The jury's award of damages, then, was supported by the time records showing those occasions on which Mr. Briggs was clocked out at the time the restaurant closed coupled with Mr. Briggs' testimony (which the jury credited) that he in fact worked past the time that the restaurant closed.

employer fails to produce such evidence, "the court may then award damages to the employee, even though the result be only approximate." *Id*. at 688.  In so holding, the Court in *Mount Clemens* emphasized that an employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of the [FLSA]."  According to the Court,

> Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages.  That rule applies only to situations where the fact of damage is itself uncertain.  But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute.  The damage is therefore certain.  The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.  In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts."  It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

*Id*. (citation omitted).

Defendants criticize plaintiffs for failing to present documentary, contemporaneous evidence of the hours that they actually worked and suggest that this failure is fatal to plaintiffs' claims for damages.  The jury, however, found that defendants directed their managers to clock out plaintiffs at the end of their scheduled shifts and before plaintiffs were finished working.  In large part, plaintiffs did not realize at the time that they were working "off the clock."  Thus, there was simply no reason for plaintiffs to have made contemporaneous calculations of their actual hours worked.  By necessity, then, plaintiffs at trial were left with their own best recollections of the hours that they worked–recollections that were aided in significant part by defendants' time records showing what days or nights, though not necessarily the total number of hours, plaintiffs

4

actually worked. Of course, the jury could have disbelieved plaintiffs' recollections or found those recollections inaccurate, but plaintiffs nonetheless were entitled to present their claims for damages to the jury based on their estimates (derived from plaintiffs' recollections) of actual hours worked. Any other ruling would preclude an employee in an FLSA case from challenging inaccurate time records unless that employee knew from the outset that his or her employer was violating the FLSA by keeping inaccurate time records. The court, then, rejects defendants' argument concerning the sufficiency of plaintiffs' evidence of actual hours worked.

In addition to challenging plaintiffs' evidence of actual hours worked, defendants argue that plaintiffs' evidence as to the amount of overtime hours worked was insufficient to support an award of overtime compensation. In that regard, the jury awarded three plaintiffs damages for overtime compensation–Juanita Robinson, Don R. Jones and Terri Schendel. According to defendants, plaintiffs' evidence was insufficient for two reasons. Defendants first assert that no evidence was presented during plaintiffs' case-in-chief as to what constituted defendants' "work week" for purposes of overtime calculations under the FLSA. Any deficiency in plaintiffs' evidence, however, was cured by defendants, who presented evidence of defendants' work week during their case.[2] Defendants, then, have waived any error in the denial of their initial motion for judgment as a matter of law at the close of plaintiffs' case. *See Peterson v. Hager*, 724 F.2d 851, 854-55 (10th Cir. 1984) (even where district court may have erred in denying motion for judgment as a matter of law at the close of plaintiff's case, the error is cured if subsequent

---

[2]Amber Peschka, defendants' accountant, testified that defendants' work week for purposes of computing overtime hours began on Monday and continued through Sunday.

testimony on behalf of the moving party repairs the defects in the plaintiff's case); *accord* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2534 (2d ed. 1994).

Second, defendants contend that no evidence was presented by plaintiffs as to the amount of overtime hours claimed by Ms. Robinson, Mr. Jones or Ms. Schendel. The court disagrees. Ms. Schendel, for example, testified that she worked between 10 and 12 hours each week "off the clock" (except for her initial pay period). Four of Ms. Schendel's pay stubs that were introduced into evidence reflected that Ms. Schendel was paid overtime for the two-week pay period (though, according to Ms. Schendel, she was not paid for all of the overtime hours that she worked). That necessarily means that Ms. Schendel worked more than 40 hours during at least one of the work weeks reflected in that two-week pay period. The jury, then, could reasonably conclude that Ms. Schendel worked an additional 10 to 12 hours of "overtime" hours during that particular week.

Mr. Jones testified that he typically worked between 2 and 3 hours past the time that the restaurant closed and that he did this about 4 or 5 nights each week. Using defendants' time records, then, the jury could first calculate the number of unpaid hours by adding an additional 2 to 3 hours for each entry that reflected (inaccurately) that Mr. Jones "clocked out" at 10pm, or the time the restaurant closed. Then, using Mr. Jones' pay stubs, the jury could reasonably ascertain an approximate number of overtime hours, particularly with those pay stubs reflecting that Mr. Jones had already worked more than 40 hours in at least one of the work weeks in the two-week pay period. Similarly, Ms. Robinson testified that she worked between 40 and 50 hours per week for the duration of her employment with KFC and that she frequently worked some of these hours "off the clock." Again, then, the jury, using defendants' time records and Ms. Robinson's pay stubs

6

reflecting that she had already worked more than 40 hours in at least one of the work weeks in the two-week pay period, could reasonably approximate an overtime pay calculation for Ms. Robinson.

*Instruction No. 16*

Defendants next contend that the court erroneously instructed the jury in Instruction No. 16. That instruction stated as follows:

> Defendants have the responsibility to record completely and accurately the hours worked by its employees. If you find that defendants' records are not complete or accurate, then each plaintiff in this case may establish a violation of the FLSA if that plaintiff proves by a preponderance of the evidence that he or she has performed work for which he or she was not properly compensated and comes forward with sufficient evidence to support a reasonable inference of the hours worked.
>
> If that plaintiff does so, then the burden shifts to defendants to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from plaintiffs' evidence. If defendants fail to produce such evidence, then you may award damages to the plaintiff in question even though such damages may be only approximate.

Defendants concede that the instruction comes nearly verbatim from the Supreme Court's decision in *Mount Clemens*, but contend that the *Mount Clemens* burden-shifting framework applies only in those cases where the employer failed to keep adequate records. According to defendants, that "is simply not the case in the present lawsuit" and thus, the instruction was erroneous. Defendants also contend that, even if *Mount Clemens* does apply, plaintiffs did not meet their burden of coming forward with sufficient evidence to support a reasonable inference of the hours worked.

The court readily concludes that its instructions to the jury correctly stated the governing

7

law and provided the jury with an ample understanding of the issues and applicable standards.  *See Grace United Methodist Church v. City of Cheyenne*, ___ F.3d ___, 2005 WL 2746701, at *12 (10th Cir. Oct. 25, 2005).  While defendants continue to insist that they kept accurate and complete time records, they made that argument to the jury and the jury rejected it, crediting instead plaintiffs' evidence that defendants' records were inaccurate and maintained unlawfully. Defendants' argument in this regard is illogical.  If they intentionally did not record all of plaintiffs' time, by definition their records were not adequate under the specific facts of this case. Moreover, defendants' contention that plaintiffs' mere recollections of their hours worked is insufficient to meet their burden under *Mount Clemens* in light of defendants' "voluminous" and "overwhelming" documentary evidence to the contrary is rejected for the reasons set forth above in connection with defendants' argument on plaintiffs' evidence of damages.  In sum, defendants have not shown that Instruction No. 16 was erroneous.

*The Deposition of Plaintiff Vicki L. Owens*

Prior to trial, plaintiffs designated portions of the deposition of plaintiff Vicki Owens to be used at trial in lieu of Ms. Owens' presence at trial.  Defendants objected, asserting that Ms. Owens was voluntarily absent from trial and was thus not eligible to invoke Rule 32(a)(3).  The court overruled defendants' objection and permitted the use of Ms. Owens' deposition in lieu of her live testimony at trial.  Defendants now renew their objection to the use of Ms. Owens' deposition, relying on the Tenth Circuit's decision in *Garcia-Martinez v. City and County of*

*Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004).  In that case, the Circuit held that the district court did not abuse its discretion by refusing to admit the deposition testimony of the plaintiff who voluntarily chose to leave the country and not attend trial.  The facts of *Garcia-Martinez* are dramatically different from those presented here and, without hesitation, the court reiterates its conclusion that the use of Ms. Owens' deposition was entirely appropriate in light of the circumstances surrounding her absence from trial.  *See id*. (district court retains "significant discretion" in applying Rule 32 to an absent party).

Under Rule 32(a)(3)(B), the deposition of a witness, whether or not a party, may be used if the witness is more than 100 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition.  It is undisputed that Ms. Owens was more than 100 miles from the place of trial.  Indeed, she was in military training in South Carolina after her reserve unit was activated.  Defendants assert that she procured her own absence from trial, such that Rule 32(a)(3)(B) would not apply, because she voluntarily joined the reserves after filing this lawsuit.  While that may be true, Ms. Owens certainly did not know that her reserve unit would be activated prior to trial and she certainly did not "voluntarily" choose to leave the state and not attend trial.  In such circumstances, the court concludes that her absence was not "procured" by her own doing.

Moreover, even if Ms. Owens somehow had procured her own absence, the court would have exercised its discretion to permit the use of Ms. Owens' deposition in lieu of her live testimony under the "exceptional circumstances" prong of Rule 32(a)(3).  Ms. Owens claimed damages in the amount of roughly $500.00.  In all likelihood, it would have cost Ms. Owens more

than that to travel to Kansas City to attend trial, including airfare and hotel expenses. This fact weighs in favor of permitting Ms. Owens to present her testimony via deposition. *See Borchardt v. United States*, 133 F.R.D. 547 (E.D. Wis. 1991) (Cost differential of $375 for deposition testimony of witness and between $1,000 and 1,250 for live testimony of witness was 'exceptional circumstance' under Rule 32(a)(3)(E) where plaintiff's total claim was only $12,402.).

In addition, the nature of the claims against defendants in this case was akin to a pattern and practice case where the defendants were alleged to have engaged in the same conduct–requiring plaintiffs to clock out but continue working and refusing to pay overtime–with respect to all plaintiffs and the only significant difference among the testimony of the plaintiffs was the amount of lost wages sought by each plaintiff. Thus, the testimony of Ms. Owens was, in many respects, largely the same as the testimony of all other plaintiffs at least with respect to defendants' conduct. In other words, unlike many cases where the key factual issues turn on the credibility and demeanor of the plaintiff, in this case the jury was able to resolve those factual issues irrespective of Ms. Owens' testimony, as numerous other plaintiffs testified to the same core facts. *Compare Garcia-Martinez*, 392 F.3d at 1191 ("When the 'key factual issues' at trial turn on the 'credibility' and 'demeanor' of the witness, we prefer the finder of fact to observe live testimony of the witness.").

Finally, defendants do not suggest that they were unable to cross-examine Ms. Owens fully. In fact, defendants were aware at the start of Ms. Owens' deposition that Ms. Owens might be called to basic training and that the possibility existed that Ms. Owens might not be present at trial. Defendants do not suggest any particularized reason for preferring the live testimony of Ms.

Owens. They do not, for example, suggest that her demeanor at the deposition cast doubt on her credibility or any other reason to prefer the live testimony of Ms. Owens. For these reasons, the court reaffirms its decision that the use of Ms. Owens' deposition was appropriate.

*Liquidated Damages*

The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1112 n.2 (10th Cir. 1999) (quoting 29 U.S.C. § 216(b)). However, if the employer had a good faith belief that its actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. *Id*. (citing 29 U.S.C. § 260). Consistent with this statutory framework, the issue of defendants' good faith was submitted to the jury in the form of special interrogatories on the verdict form. Specifically, the jury was asked, with respect to each individual plaintiff, whether defendants had proved, by a preponderance of the evidence, that they acted in good faith and had reasonable grounds to believe that their actions did not violate the FLSA. With respect to each plaintiff, the jury answered "no" to this question. That is, the jury specifically found that defendants had not proven that they acted in good faith.

Based on the jury's finding, the court included in the judgment entered an award of liquidated damages for each plaintiff. According to defendants, the court's assessment of liquidated damages was premature because 29 U.S.C. § 260 requires defendants to prove to the satisfaction of the court, not the jury, that defendants acted in good faith. Defendants, then, urge

11

that the jury's finding was merely advisory and not determinative of the good faith issue. Plaintiffs have not responded to this argument in any respect. In any event, defendants are correct that the court, not the jury, must ultimately determine whether liquidated damages are appropriate. *See Brock v. Superior Care Inc.*, 840 F.2d 1054, 1063 (2d Cir. 1988) (since an award of liquidated damages under the FLSA is within the discretion of the district judge pursuant to 29 U.S.C. § 260, no right to a jury is available on that issue) (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)); *accord El v. Potter*, 2004 WL 2793166, *13 (S.D.N.Y. Dec. 6, 2004); *Bertrand v. Orkin Exterminating Co.*, 454 F. Supp. 78, 81 (N.D. Ill. 1978) (employer's good faith under 29 U.S.C. § 260 is a question of fact for the court, even when the rest of the case has been tried to a jury). Thus, the jury's finding on the good faith issue is simply advisory. *See, e.g., Templet v. Hard Rock Construction Co.*, 2003 WL 22717768, at *1-2 (E.D. La. Nov. 17, 2003) (in FLSA case, jury was asked to answer in advisory capacity the question of defendant's good faith); *Palma v. Pharmedica Communications, Inc.*, 2003 WL 22750600, at *1 (D. Conn. Sept. 30, 2003) (same, in FMLA context).

Having considered the evidence presented at trial,[3] as well as the jury's response to the question of defendants' good faith, the court now readily concludes that defendants did not act in

---

[3]Defendants suggest that the court conduct an evidentiary hearing to provide the parties with an opportunity to present evidence and arguments relating to the issue of liquidated damages. In light of the unequivocal testimony presented at trial, however, the court finds that an evidentiary hearing is unnecessary and would not shed any additional light on the issues. *See, e.g., Templet*, 2003 WL 22717768, at *1 (determining good faith issue based on evidence presented at trial; no separate evidentiary hearing was held); *Palma*, 2003 WL 22750600, at *1(same).

good faith and did not have reasonable grounds to believe that their actions did not violate the FLSA. Elaine Cook, the sole shareholder of Food Service of Belton, Inc., testified that she fully understood the overtime obligations of the FLSA. Similarly, John Cook, the president and general manager of Food Service of Belton, Inc.'s Kentucky Fried Chicken restaurant, testified that he fully understood the minimum wage and overtime requirements imposed by the FLSA. Nonetheless, plaintiff Terri Schendel testified that, as an assistant manager at the KFC, she was specifically instructed by John Cook to "clock out" employees at the end of an employee's scheduled shift–even if the employee was still working–because the company could not afford to keep those employees on the clock. Ms. Schendel further testified that she complained about this procedure to Elaine Cook, who simply told her to address the issue with Mr. Cook. When Ms. Schendel confronted Mr. Cook to tell him that she did not believe it was "right" to require employees to work off the clock, Mr. Cook told Ms. Schendel that it was "none of [her] business." Numerous plaintiffs testified that they were told by Jesse Fugate, a manager, that John Cook instructed him to clock employees out at the end of their scheduled shift regardless of whether those employees were still working. In light of this evidence, evidence which the jury obviously found credible and which the court did, as well, the court concludes that defendants have not met their burden of showing that they acted in good faith and that they had reasonable grounds to believe that their actions did not violate the FLSA. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (no abuse of discretion where district court concluded that where plaintiffs were required to work "off the clock" with defendant's knowledge, defendant lacked good faith); *see also Department of Labor v. City of Salpulpa, Oklahoma,* 30 F.3d 1285, 1289 (10th Cir. 1994)

(good faith requirement of section 260 mandates the employer have an honest intention to ascertain and follow the dictates of the FLSA). Liquidated damages, then, are appropriate. *See Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1245 (10th Cir. 2000) ("Under the FLSA, an award of liquidated damages is mandatory except where the employer shows it acted in good faith.").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' renewed motion for judgment as a matter of law or, in the alternative, for new trial (doc. #87) is denied.

**IT IS SO ORDERED.**

Dated this 4th day of November, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
